UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------X
                                                           :
MALIBU MEDIA, LLC.,                                        :
                                                           :    Case No. 2:12-cv-01150-LDW-GRB
                                                           :
                        Plaintiff,                         :
                                                           :
            vs.                                            :
                                                           :
JOHN DOES 1-11,                                            :
                                                           :
                        Defendants.                        :
                                                           :
-----------------------------------------------------------X
```

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE REPORT AND
RECOMMENDATION**

  Plaintiff Malibu Media, LLC and Plaintiff Patrick Collins, Inc., by and through undersigned counsel, ask the Court to reconsider the Honorable Magistrate Judge Brown's Report and Recommendation (Doc. No. 4) recommending that plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees and hereby files these objections thereto.

**I.   INTRODUCTION**

  Plaintiff respectfully opposes the report and recommendation prepared by the Honorable Magistrate Judge Brown. On March 8th, 2012 Plaintiff filed the above action. (Doc. No. 1). On March 12, 2012 Plaintiff filed its Motion for Leave to Serve Third Party Subpoenas Prior to a Rule 26(f) Conference on the basis that the Doe Defendants in this case are all alleged to have committed

1

copyright infringement and the Defendants identities are currently unknown. (Doc. No. 3). On May 1st, 2012 the Honorable Judge Brown issued an Order & Report and Recommendation granting in part and denying in part Plaintiff's Motion for Leave. (Doc. No. 4). Judge Brown recommended that all defendants other than the individual designated John Doe 1 should be dismissed and granted Plaintiff discovery to obtain John Doe 1's name and address so that it may serve John Doe 1. Judge Brown further recommended that the Court direct Plaintiffs and counsel that "any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper filing fees." Id. No defendants have been identified or have participated in this law suit.

Plaintiffs Malibu Media and Patrick Collins are faced with a massive problem of copyright infringement and have filed these suits completely within the bounds of the rules. Each month, thousands of infringers steal from both Plaintiffs. The reality is that people are taking the movies and being unjustly enriched. On one side, we have a Plaintiff that is a victim of mass theft. The law favors the copyright owner and is clear; you cannot take someone else's copyright on the Internet without compensating the owner. Unfortunately for copyright owners, there is not a better remedy than the suits the copyright owner has presented before the Court. The copyright owners and the attorneys are properly using the law to bring these claims.

On the other side you have a person whose Internet provider is clearly being used to commit theft. When you balance the equities of a person whose property is being used to commit a civil wrong versus the victim, it is clear that the law favors the copyright owner. The best way for Plaintiff to deter infringement is to reach a widespread amount of people. Plaintiff does intend to proceed against a number of defendants and will do so. With all due respect to the Honorable Judge Brown, Plaintiff respectfully suggests to this Court that the actions of K-Beech and its counsel were not abusive litigation tactics, but instead clearly reasonable given the circumstances and entirely

permissible under the law.

The Honorable Judge Brown claims that Plaintiffs are different from copyright holders in other suits based on their settlements tactics. (Doc. No. 4, 16). "[T]hese tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves." Id. The RIAA engaged in nearly identical suits and is estimated to have sued 35,000 individuals.[1] John Wiley and Sons, makers of the popular book series *For Dummies,* have brought almost twenty similar suits in the Southern District of New York in the past few months[2]. The producers of the Academy Award winning movie The Hurt Locker have sued nearly 50,000 people for illegally downloading their movie[3]. This is the same type of litigation and the same problem.

Without violating the Rules of Civil Procedure and/or public policy, there is no justification for the attack Judge Brown made on the attorneys in these cases. Even, arguendo, assuming he was right about a lack of intent to litigate, the attorneys and Plaintiffs did not engage in an improper tactic or process. In these cases it is necessary to look at the offense being committed and the size of the damages to determine whether the actions being made are sensible.

The Supreme Court has instructed the Federal Judiciary to apply the law as it exists without creating new standards for new technologies.

---

[1] See Music Industry to Abandon Mass Suits at http://online.wsj.com/article/SB122966038836021137.html
[2] See John Wiley & Sons, Inc. v. John Does Nos. 1-27, 1:11-cv-07627-WHP, (S.D.N.Y. Oct. 27, 2011); John Wiley & Sons, Inc. et al v. John Doe 1-5, 1:11-cv-08831-KBF, (S.D.N.Y. Dec. 5, 2011); John Wiley & Sons, Inc. v. John Does Nos. 1-36, 1:11-cv-08943-JPO, (S.D.N.Y. Dec. 7, 2011); John Wiley & Sons, Inc. v. John Does Nos. 1-31, 1:12-cv-00079-PKC, (S.D.N.Y. Jan. 5, 2012); John Wiley & Sons, Inc., v. John Does Nos. 1-35, 1:12-cv-00540-LTS, (S.D.N.Y. Jan. 23, 2012); John Wiley & Sons, Inc. v. John Does Nos. 1-37, 1:12-cv-01027-KBF, (S.D.N.Y. Feb. 9, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-36, 1:12-cv-01247-BSJ-HBP, (S.D.N.Y. Feb. 17, 2012); John Wiley & Sons, Inc. v. John Does Nos. 1-24, 1:12-cv-01352-GBD, Feb. 23, 2012; John Wiley & Sons, Inc. v. John Doe Nos. 1-44, 1:12-cv-01568-WHP, (S.D.N.Y. Mar. 2, 2012); John Wiley & Sons, Inc. v. Doe Nos. 1-38, 1:12-cv-01783-KBF, (S.DN.Y. Mar. 9, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-37, 1:12-cv-01980-KBF, (S.D.N.Y. Mar. 16, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-35, 1:12-cv-02190-BSJ, (S.D.N.Y. Mar. 23, 2012); John Wiley & Sons, Inc. v. John Does Nos. 1-35, 1:12-cv-02400-SAS,(S.D.N.Y. Mar. 30, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-37, 1:12-cv-02684-VM (S.D.N.Y.Apr. 7, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-35, 1:12-cv-02968-RWS, (S.D.N.Y. Apr. 13, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-40, 1:12-cv-03161-JMF, (S.D.N.Y. Apr. 20, 2012); John Wiley & Sons, Inc. v. John Does Nos. 1-43, 1:12-cv-03372-PGG, (S.D.N.Y. Apr. 27, 2012); John Wiley & Sons, Inc. v. John Doe Nos. 1-35, 1:12-cv-03563-NRB, (S.D.N.Y. May 4, 2012).
[3] See 50,000 BitTorrent Users Sued for Alleged Illegal Downloads at http://money.cnn.com/2011/06/10/technology/bittorrent_lawsuits/index.htm

> The Supreme Court has expressly instructed that courts apply the Copyright Act to new technologies. In *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. 417 (1984), the Court instructed that courts must "[a]pply[ ] the copyright statute, as it now reads, to the facts as they have been developed" even though Congress might ultimately "take a fresh look at this new technology, just as it so often has examined other innovations in the past.

Sony BMG Music Entm't v. Tenenbaum, 660 F.3d 487, 501 (1st Cir. 2011). Joinder is proper, as explained below, and these cases clearly evidence proper joinder. Further the actions of Plaintiff and counsel are proper. There is no justification for the Court to distinguish Plaintiff from other cases and hold Plaintiff and Plaintiff's counsel to different and unreasonable standards.

## II.  ARGUMENT

### A. The Court's Conclusion that Plaintiffs Have or Will Engage in Improper Litigation Tactics is Incorrect

Prior to actually proceeding against defendants, it is proper to contact them to discuss settlement options. The actions of the attorney in the K-Beech case were not improper or abusive. There is absolutely nothing wrong with K-Beech refusing to investigate a Defendant's laptop before serving the Defendant and receiving an answer to the complaint, or formally entering the discovery process. Any attorney would acknowledge that it is in the best interests of his client to engage in forensic analysis during the proper court supervised discovery phase when attorney's fees apply to each party.

In the K-Beech case, the Defendant had not even been identified, he had simply called in from the response he had received from his Internet Service Provider. Counsel for K-Beech could not even verify that the Defendant was the actual owner of the alleged IP Address. Rejecting a counter offer by the Defendant to analyze the Defendant's evidence before the Defendant is even identified by name, does not constitute an improper or abusive litigation tactic. With all due respect to the Honorable Judge Brown, Plaintiff respectfully suggests to this Court that the actions of K-

4

Beech and its counsel were not abusive litigation tactics, but instead clearly reasonable given the circumstances and entirely permissible under the law.

Further, the Honorable Judge Brown assumes that based on one statement by a *pro se* Defendant in a case with other counsel and a different Plaintiff, undersigned and Plaintiffs Patrick Collins and Malibu Media will similarly engage in improper litigation tactics without any evidence to support this claim. Judge Brown states:

> Given the unopposed, sworn account by John Doe # 16, which dovetails with the experience of defendants in other actions brought by K-Beech and Patrick Collins, I find counsel for K-Beech has already engaged in improper litigation in this matter, and find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations.

(Doc. No. 4, 17). This conclusion is clearly erroneous. Courts around the country have found that Patrick Collins Inc. has not engaged in improper litigation tactics. Indeed, the District Court of Arizona specifically stated that Patrick Collins Inc. was litigating properly when a Defendant raised the issue of being subject to unfair settlement tactics. "The likelihood that John Doe 6 will be subject to such tactics is minimal here; the Court will not conclude based on the tactics of other lawsuits in other districts that this suit was brought for a purely improper purpose." Patrick Collins, Inc. v. John Does 1-54, CV-11-1602-PHX-GMS, 2012 WL 911432 (D. Ariz. Mar. 19, 2012) (emphasis added). The District Court of Arizona specifically described the actions of Patrick Collins Inc. "Although Plaintiff has settled some claims, it has dropped its claims against many Defendants. Unlike cases in which no defendants were served, Plaintiff here has served multiple named Defendants, and continues to litigate against one." Id. Contrary to the District Court of Arizona, Judge Brown makes assumptions on Defendant's behavior, even when he admits that they appear on the surface as a reasoned approach, based on the actions of other plaintiffs and other courts. "On a cold record, this overview could be viewed as a reasoned approach. However, when viewed against undisputed experience of John Doe #16, described above, and findings by other courts, this suggests

5

an approach that is highly inappropriate." (Doc. No. 4, 11).

If this Court were to adopt Judge Brown's report and recommendation, attorneys in BitTorrent actions would likely be left with an unreasonable and unclear standard to follow in order to avoid any indicia of improper litigation tactics. Further, as evidence of an intent to not pressure settlements from defendants, undersigned will not object to any defendants in BitTorrent litigation actions who wish to proceed under a protective order and has consistently not contested to this in the past. See Raw Films, Inc. v. John Does 1-24, 1:11-cv-02162-REB-MJW (D. Colo. Dec. 30, 2011).

### B. The Court's Conclusion That Plaintiff Did Not Satisfy the Second Test in SONY is Incorrect

Plaintiff respectfully disagrees with the Honorable Judge Brown's conclusion that the subscriber of an IP Address is not likely to identify an infringer and that Plaintiff has not clearly satisfied the second factor of the Sony Music test. In his report and recommendation Judge Brown states, "[t]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time." (Doc. No. 4, 6). Additionally, when considering the second Sony factor towards granting discovery, Judge Brown states, "[w]hile the discovery propounded by the plaintiffs is specific, for the reasons discussed above, it does not establish a reasonable likelihood it will lead to the identity of defendants who could be sued." (Doc. No. 4, 13).

While it may be true that an IP address does not directly identify the person who downloaded the movie, Plaintiff does believe it is highly likely to lead to the infringer and is not factually distinguishable from the Arista Records decision. In Arista Records, the Doe Defendants resided at a university. Plaintiff contends that wireless networks were as prominent as and less likely to be secured in 2009 than they are today, contrary to Judge Brown's assertion[4]. Further, in a large

---
[4] See Free Wi-Fi is Gone Forever www.pcmag.com/article2/0,2817,2402137,00.asp (Attached as Exhibit A)

University setting where students often share computers, access to each other's living spaces, and engage in similar activities regarding entertainment, much greater confusion as to the infringer may exist. Indeed, in the cases at hand, defendants are far more likely to maintain control of their Internet in their personal residences, particularly when they are paying for their Internet service and most likely reside with family or by themselves.

Recently, PC Magazine published an article regarding the scarcity of open wireless signals. "These days, you are lucky to find one in 100 Wi-Fi connections that are not protected by passwords of some sort."[5] The author continues to explain why routers are now more likely to be secured. "The reason for the change is simple: the router manufacturers decided to make users employ security with the set-up software. As people upgrade to newer, faster routers, the wide-open WiFi golden era came to an end."[6] This article, published on March 26, 2012, runs contrary to Judge Brown's assertions and supports the idea that most households do have closed, protected wireless that are not likely to be used by a neighbor or interloper. Plaintiff believes most of the Defendants in this case do not live in large dormitories or high traffic living areas. Indeed, it appears that the Defendants tend to be in single family homes. Plaintiff finds the amount of Defendants who claim open Wi-Fi networks and no knowledge of illegal file sharing to be uncommonly disproportionate to the general population and suspects Defendants may be promulgating these defenses early in the litigation process to avoid further being sued. Indeed, Defendants believe that by asserting a number of different defenses, including the interloper who sits in their parking lot and downloads the movie through their unsecured wireless, judges will be more likely to sever making it more difficult for Plaintiff to hold them to account. In fact, the PC Magazine article even addresses this exact issue.

> To prevent that sort of sharing from become prevalent, you'll hear scary stories about creeps driving around to get a free connection and downloading porn on someone

---

[5] Id.
[6] Id.

else's account.  Really? How many people are actually suckered into believing that sort of hokum?  <u>Whatever the case, I seriously do not think that this is a widespread problem.</u>

Further, if this Court were to adopt the report and recommendation, it could have negative implications for Federal Law Enforcement, which uses the same procedure to identify cyber crimes. In a Statement of Deputy Assistant Attorney General Jason Weinstein before the Senate Judiciary on Privacy, Technology and the Law, he discusses how Federal law enforcement use IP addresses to identify an individual.

> When a criminal uses a computer to commit crimes, law enforcement may be able, through lawful legal process, to identify the computer or subscriber account based on its IP address. This information is essential to identifying offenders, locating fugitives, thwarting cyber intrusions, protecting children from sexual exploitation and neutralizing terrorist threats.[7]

Recently, the Eastern District of Pennsylvania, in a nearly identical case, discussed the same issue before this Court over whether an IP address was sufficient to identify the infringer.

> The Court acknowledges that Verizon's compliance with the subpoena may not directly reveal the identity of an infringer. Indeed, the subscriber information Verizon discloses will only reveal the account holder's information, and it may be that a third party used that subscriber's IP address to commit the infringement alleged in this case.

<u>Raw Films, Ltd. v. John Does 1-15</u>, CIV.A. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012). (Internal citations omitted).  The Court went on to note that while the IP address did not guarantee the subscriber was the infringer, it was not necessary to do so, particularly because the discovery rules 'permit parties to obtain discovery of 'the identity and location of persons who know of any discoverable matter.' Fed. R. Civ. P. 26(b)(1)." <u>Id.</u>   When analyzing the Sony test and the specificity of the discovery request, the court said, "[a]gain, although the provision of this information may not directly identify the proper defendants, it is sufficiently tailored to lead to the identification of those individuals." <u>Id.</u> at *7.

---

[7] Statement of Deputy Assistant Attorney General Jason Weinstein Before the Senate Judiciary Subcommittee on Privacy, Technology and the Law available at www.justice.gov.

### C. The Court's Recommendation That Plaintiff File Separate Actions is Incorrect

Judge Brown contends that the Defendants actions did not arise out of a series of transactions because the Defendants did not know each other and the time periods were separate. This requirement is erroneous because Fed. R. Civ. P. 20(a) permits joinder when: (1) there is the "same transaction or occurrence" or (2) a "series of transactions or occurrences" or (3) claims upon which the Defendant asserts the right to relief jointly or "severally" against the Defendants. Rule 20(a) not only permits permissive joinder when there is the same transaction or occurrence, it also permits joinder when a Plaintiff has pled (a) "series of transactions or occurrences" or (b) joint or several liability. Plaintiff has done both here.

The Southern District of New York, consistent with this analysis has developed a standard for proper joinder in copyright BitTorrent actions where the pleadings "must be based on specific allegations connecting the defendants to the same specific swarming transaction, or series of transactions, to support their joinder." Digital Sin v. Does 1-176, 12-CV-00126 AJN, 2012 WL 263491, at *5 (S.D.NY. Jan. 30, 2012) (citing DigiProtect USA Corp v. Does, 10 CIV. 8760 PAC, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011)). Here, all of the defendants participated in the same BitTorrent swarm.

#### i. The Infringement Occurred Through a Series of Transactions

For the word "series" to have any meaning in Rule 20(a), the rule must permit joinder to be proper when there is something other than a direct transaction. "Series" has been interpreted by Circuit Courts to mean a "logically related" fact pattern.

> [A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1333 (8th Cir. 1974).

While the logical relationship test does not require it, should this matter go to trial, Plaintiff will prove that the Defendants' infringement was committed through the same transaction or through a series of transactions with mathematical certainty by demonstrating, *inter alia,* that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different <u>but for</u> each of the Defendants' infringements.

### ii. Series of Transactions Explained By the Michigan Court

Recently, Judge Randon in the Eastern District of Michigan properly analyzed the facts in a near identical case, expanding substantial effort to understand the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation asserting that each Defendant copied the same piece of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8–10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie—traceable via Hash Identifier to the same Initial Seeder—on his or her computer and allowed other peers to download pieces of the Movie.
> By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendants' computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

Patrick Collins, Inc. v. John Does 1-21, CIV.A. 11-15232, 2012 WL 1190840, at *4-5 (E.D. Mich. Apr. 5, 2012). Significantly, Judge Randon than explained through the force of clear deductive logic that each Defendant obtained the piece of plaintiff's movie in one of four ways all of which relate directly back to one individual seed.

> If Plaintiffs allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways:
> 1) the Defendant connected to and transferred a piece of the Movie **from the initial seeder;** or

10

> 2) the Defendant connected to and transferred a piece of the Movie **from a seeder** who downloaded the completed file from the initial seeder or from other peers; or
> 3) the Defendant connected to and transferred a piece of the Movie **from other Defendants** who downloaded from the initial seeder or from other peers; or
> 4) the Defendant connected to and transferred a piece of the Movie **from other peers** who downloaded from other Defendants, other peers, other Seeders, or the Initial Seeder.
> In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or directly, to each Defendant, and finally to IPP.

Id. Having limited the universe to four possibilities the court correctly concluded the transaction was logically related.

> Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same Movie, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in the same swarm.

Id.

### iii. The Supreme Court Allows Joinder When The Defendants Do Not Know Each Other and The Events Occurred At Different Times

In United States v. Mississippi, 380 U.S. 128 (1965) the Supreme Court found that the joinder of six defendants, election registrars of six different counties, was proper because the allegations were all based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. Although the complaint did not allege that the registrars directly interacted with each other, or even that they knew of each other's actions, or that each other's actions directly affected each other in any way, the Supreme Court interpreted Rule 20 to hold a right to relief severally because the series of transactions were related and contained a common law and fact. Id. at 142-143.

11

> [T]he complaint charged that the registrars had acted and were continuing to act as part of a state-wide system designed to enforce the registration laws in a way that would inevitably deprive colored people of the right to vote solely because of their color. On such an allegation the joinder of all the registrars as defendants in a single suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

Id. at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they were all acting on the basis of the same system which created a transactional relatedness.

Likewise, in the case at hand, it is not necessary for each of the defendants to have directly interacted with each other defendant, or have shared a piece of the file with each and every defendant when downloading the movie. The defendants are properly joined because their actions directly relate back to the same initial seed of the swarm, and their alleged infringement further advances the series of infringements that began with that initial seed and continued through other infringers. In doing so, the Defendants all acted under the same exact system. Just as it was not alleged in United States v. Mississippi that the registrars shared with each other their efforts to prevent African Americans from voting, it is not necessary for the defendants to have shared the pieces of the movie with each other. It is sufficient that the defendants shared pieces that originated from the same exact file, and opened their computer to allow others to connect and receive these pieces.

      iv.    **Joinder is Proper Because Plaintiff Properly Pled <u>Defendants Were Jointly and Severally Liable</u>**

The tests in the cases cited by Defendant requiring the defendants to directly send each other a piece of the movie further contradicts joinder principles because joinder is proper when a plaintiff pleads joint and several liability. See Genetic Technologies Ltd. v. Agilent Technologies, Inc., 11-CV-01389-WJM-KLM, 2012 WL 1060040 (D. Colo. Mar. 28, 2012) ("It is uncontested that Plaintiff does not assert joint or several liability here, which would be a separate basis for joinder.")

Rule 20(a) provides for "any right to relief jointly, severally, or in the alternative". In this case Plaintiff pled both joint and several liability.

> **Relief May be Sought "**Jointly**, Severally, or in the Alternative":** It is *not* necessary that each plaintiff or defendant be involved in every claim set forth in the complaint. Thus, for example, if there are several plaintiffs (e.g., driver and passenger in auto accident), each may seek *separate* relief. Likewise, if there are several defendants, relief may be sought against each of them separately, or against all of them jointly. [FRCP 20(a); *Dougherty v. Mieczkowski* (D DE 1987) 661 F. Supp. 267, 278]

Cal. Prac. Guide Fed. Civ. Pro. Before Trial Ch. 7-D. "[C]oncert of action, *i.e.,* a right to relief jointly, is not a precondition of joinder. Plaintiff asserts a right to relief jointly against Defendants *and* severally. Therefore, the first clause of Rule 20(a)(2)(A) is satisfied by the assertion of a right severally." Patrick Collins, Inc. v. John Does 1-21, CIV.A. 11-15232, 2012 WL 1190840, at *8 (E.D. Mich. Apr. 5, 2012).

By requiring defendants to directly interact with each other, the Court would require the defendants to be jointly liable with each other. Because Rule 20 provides that a party may be joined if the claims against them are either jointly or severally liable, the requirement that defendants directly shared pieces of the movie with each other contradicts the language of Rule 20.

> A right to relief against defendants jointly requires concerted action by two or more parties. A right to relief severally against defendants means that each right to relief is separate and distinct from defendant to defendant and no interaction among the defendants is required. An 'alternative' right to relief may be asserted when plaintiff knows one of the defendants is liable, but does not know which one. 4 Moore's Federal Practice § 20.03. <u>Plaintiff asserts a right to relief against Defendants jointly and a right to relief severally; however, a right to relief against the Defendants severally alone is sufficient to satisfy the first clause of Rule 20.</u>

Id. (Emphasis added).

      v.    **There Are Common Issues of Fact and Law**

Rule 20(a)(2)(B) requires the plaintiffs' claims against the putative defendants to contain a common question of law or fact. "The Plaintiff meets this requirement. In each case, the Plaintiff

13

will have to establish against each putative defendant the same legal claims concerning the validity of the copyrights in the movies at issue and the infringement of the exclusive rights reserved to the plaintiffs as copyright holders." Nu Image, Inc. v. Does 1-3, 932, 2:11-CV-545-FTM-29, 2012 WL 1255189 (M.D. Fla. Apr. 12, 2012). The "factual issues related to how BitTorrent works and the methods used by plaintiffs to investigate, uncover and collect evidence about the infringing activity will be essentially identical for each putative defendant." Call of the Wild Movie v. Does 1-1,062, 770 F. Supp. 2d 332, 344-345 (D.D.C. 2011).

### vi. Different Defenses at this Stage of the Litigation is Irrelevant

Plaintiff disagrees with the Honorable Judge Brown's contention that because the Defendant's raised different factual defenses in Motions to Quash and Sever, the Court should sever the Defendants at this stage of the litigation process. In Arista Records, the Northern District of New York addressed this issue, opining that joinder of the defendants at this stage of the litigation process was not impacted by defenses. See Arista Records LLC v. Does 1-16, 1:08-CV-765 GTS/RF, 2009 WL 414060 (N.D.N.Y. Feb. 18, 2009) aff'd sub nom. Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010).

> To keep this finite community of defendants within this lawsuit will not, at this juncture of the litigation, generate any prejudice or harm to their respective defenses. Moreover, a joint defense may be more advantageous than previously considered. And should any prejudice or conflict arise, the Court can address the matter at that time. As the facts and circumstances become ripe and suggest or warrant severance, all can avail themselves of such a request then.

Id. Further the Southern District of New York has addressed this issue stating, "courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts." Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239 (S.D.N.Y. 2012).

14

### III.  CONCLUSION

For the foregoing reasons, Plaintiff Patrick Collins Inc. and Malibu Media, LLC respectfully request that the Court decline to adopt the Report and Recommendation by Magistrate Judge Brown, specifically the recommendation that Plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant.

Dated: May 15, 2012

Respectfully submitted,

By: /s/*Jason Kotzker*
Jason Kotzker
NY Bar No. 4286829
jason@klgip.com
KOTZKER LAW GROUP
9609 S. University Blvd. #632134
Highlands Ranch, CO 80163
Phone: 303-875-5386
*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

I hereby certify that on May 15, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:  /s/ *Jason Kotzker*